**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 14-10282-PBS-2 |
| | ) | |
| **JOSEPH SPAGNUOLO-KAZONIS,** | ) | |
|    Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

On September 3, 2015, the defendant JOSEPH SPAGNUOLO-KAZONIS ("KAZONIS") pled guilty to the indictment, which charged a conspiracy to possess with intent to distribute marijuana. Sentencing is scheduled for January 14, 2015. The government respectfully requests that the Court impose the following sentence:

(a) incarceration for a term of 18 months, which is at the low end of the advisory guidelines range;

(b) no fine;

(c) 36 months of supervised release;

(d) a mandatory special assessment of $100; and

(e) forfeiture in the form of the proposed order of forfeiture (money judgment) and preliminary order of forfeiture.

**I.   BACKGROUND OF THE CASE**

This case arose from an investigation by the FBI and Massachusetts State Police ("MSP") into criminal activity by the New England Family of La Cosa Nostra ("NELCN"). The FBI identified co-defendant Louis DiNunzio as a member of the NELCN and KAZONIS as an associate of the NELCN. PSR ¶ 8.

Although relatively short in time (July 2013 through February 4, 2014), this conspiracy to

import high grade marijuana from California to Massachusetts was complicated: KAZONIS and DiNunzio traveled from California to Massachusetts on each of at least three occasions, located a supplier, purchased a large supply of marijuana and shipped it surreptitiously by UPS to Massachusetts, where it was recovered and distributed.   PSR ¶ 9.   This short summary does not do justice to the steps required at each stage of the conspiracy.   For example, to ship the marijuana, KAZONIS and DiNunzio broke the total shipment into four separate boxes, broke those boxes into two separate shipments, went to two different UPS stores, affected two different false personas, invented two different false addresses to receive the shipments, monitored the marijuana as it made its way across the United States, stayed in constant touch with intended recipients like co-defendant Woodman, and even used layers of people and counter-surveillance before bringing the boxes to their ultimate destination, Woodman's house.   PSR ¶¶   19-28.   Each step in this intricate dance had one intention: to avoid detection of their illegal conspiracy.   Furthermore, they had to use a former UPS driver—codefendant Robert Fitzpatrick—to recruit an active UPS driver to divert the boxes of marijuana.   PSR ¶ 13.

The conspiracy succeeded.   In July 2013, they successfully brought back approximately 23 pounds of "Skywalker," a high potency and high value strain of marijuana.   PSR ¶ 11.[1]  According to one user, "Yusuf1980", Skywalker is a "[v]ery potent strain of herb. Makes me extremely medicated after two good sized rips from the bong. A very energetic high, long lasting with some munchie stirring abilities. A keeper."[2]   KAZONIS and DiNunzio paid between $2,000 and $2,500 per pound for the Skywalker and likely made, at a profit of $1,000 per pound, which

---

1  Also see the Chart of Marijuana Weights, attached to this memorandum as Exhibit A, which was supplied to Probation and the defense with the government's statement of offense conduct.
2  http://www.theweedblog.com/skywalker-marijuana-strain-review-and-pictures/

was a likely estimate, approximately $20,000 profit.[3]   PSR ¶ 11.

A month later, the two returned to California and sent back approximately 38 pounds, which would have generated another $38,000 profit.   PSR ¶ 16.   The defendants were not caught until February, 2014, when they sent their largest shipment of over 66 pounds, which would have cost over $120,000 and likely would have generated over $60,000 profit.   PSR ¶¶ 25, 28.

## II.   ADVISORY SENTENCING GUIDELINES ANALYSIS

The government adopts the Sentencing Guidelines analysis applied by the PSR.   The PSR found that KAZONIS was responsible for between 40 and 60 kilograms, which is base offense level 18 and was consistent with the government's representation at the change of plea hearing.[4]   PSR ¶ 34.   KAZONIS receives a three level decrease for acceptance of responsibility.   PSR ¶¶ 41-42, yielding a total offense level of 15.

KAZONIS has no convictions and therefore no criminal history points.   PSR ¶ 48.   At total offense level 15 and CHC I, KAZONIS's advisory GSR is 18 to 24 months.

## III.   SECTION 3553(a) FACTORS

The government requests a sentence of 18 months' imprisonment, which is at the low end of the advisory GSR, because of the size, complexity and profitability of the conspiracy; KAZONIS's LCN connections; and in order to instill a proper respect for the law and to deter others.

---

[3]  The price for marijuana in Massachusetts in 2013 was approximately $300 per ounce and from $2,500 to $4,000 per pound, depending on quality.   See http://www.boston.com/news/local/massachusetts/2014/06/27/state-police-are-badly-underestimating-the-price-their-weed-stash/xYETbn8Ci7vJwrSj6LOrvM/story.html; http://www.golocalworcester.com/news/the-highest-marijuana-prices-in-new-england-by-state.   This price is consistent with current Massachusetts average prices of $283 to $339, depending on location and quality.   See http://www.priceofweed.com/prices/United-States/Massachusetts.html.   And as of January, 2014, Skywalker was selling – legally – in Colorado for $50 for one eighth of an ounce, which converts to $6,400 per pound.   See http://www.thecannabist.co/2014/01/20/marijuana-review-skywalker-og-strain-theory/2971/.

[4]  The government also represented that it would request a sentence within the GSR, which it has done.

### A.     The Nature of the Offense

#### *1. The Marijuana Conspiracy Was Serious.*

California and Massachusetts now permit the legal use of marijuana for medicinal purposes and Massachusetts has decriminalized the possession of small quantities (i.e. one ounce or less) of marijuana; of course, marijuana remains completely illegal under federal law and distributing any amount of marijuana outside of an authorized medicinal route remains illegal in Massachusetts.   California and Massachusetts have tight regulatory systems for a reason: to protect the public.   The fact that these regulatory schemes exist does not make the defendants less culpable; in fact, the defendants subverted every regulation and defied the purposes behind them by making marijuana available to anyone and at any time.

Marijuana remains a serious and potent drug and unregulated sale is permitted nowhere, especially not in Massachusetts.   Yet the defendants here were selling vast quantities outside the legal apparatus, where the drug could come into any hands, including those of children. That is the most troubling aspect of the defendants' crime: that at least some of the 60 pounds of illegal marijuana that defendants set loose into the Massachusetts economy likely found its way to children.[5]   While the population continues to debate the merits of marijuana use for *adults*, the political and scientific conclusion is that its use by teenagers and children is harmful, because marijuana like Skywalker is stronger than it was and because the adolescent brain is not fully formed until age 25 and therefore more vulnerable.[6]   The dangers of smoking marijuana as an adolescent include: impaired memory and decreased concentration; decreased IQ of 4 to 6 points, on average; poor educational outcomes; increased anxiety and depression; and more.   Id.

---

[5] In fact, KAZONIS's phone was in contact with a sophomore at a Rhode Island college, whom the government declines to identify, who admitted that he purchased marijuana from KAZONIS.

[6] See Jankelson, Julie and Moffatt, Erica, "Marijuana Use among Teens: What they – and their parents—should know," Harvard Vanguard 2015, attached as Exhibit B.

Moreover, these increased risks come as teens increasingly view the drug as not harmful.  Id. At the same time, manufacturers increasingly market the drug to teens and children, as witnessed by names like "Skywalker."  A sentence of incarceration is necessary here to send the strong message that illegal sales, especially illegal sales to young people, will not be permitted.

2. *The Conspiracy Was Sophisticated and Organized.*

As described above, the criminal activity here was sophisticated and well planned. These facts are significant in two respects.  First, they demonstrate that this crime did not result from mistake or an error in judgment: the defendant knew what he was doing because he did it carefully and repeatedly over a period of months.  Second, the level of complexity here demonstrates a greater dangerousness.

This organized criminal activity is, not surprisingly, typical of organized crime.  The fact that KAZONIS is an associate of the NELCN and conspirator with DiNunzio, a member of the NELCN, makes this crime more dangerous and more deserving of punishment.  Organized crime, like the LCN, by its very nature is more dangerous "because leaders or individuals with the ability to direct the criminal activity of others pose a special threat to the safety of the community."  United States v. Digiacomo, 746 F. Supp. 1176, 1182 (D. Mass. 1990) (citing cases).  This greater dangerousness calls for a serious sentence of imprisonment.

**B.    Characteristics of the Defendant**

KAZONIS, to his credit, has no prior convictions.  PSR ¶ 47.  KAZONIS, at 30 years old, also has little else to show for himself.  Despite a secure home, supportive family, good health and a high school education, KAZONIS has little work history prior to his indictment here, which prompted him to begin working for Uber.  PSR ¶¶ 53-72.

Despite his lack of a criminal record, KAZONIS's associations are criminal in nature. His life-long friend is the co-defendant, Louis DiNunzio, a member of the NELCN, and was present at Louis DiNunzio's illegal gambling location. PSR ¶ 59. His mother's longtime fiancé is Carmen DiNunzio, the former boss of the NELCN until he went to federal prison for bribery. PSR ¶ 56; Cr. No. 08-10094-WGY-1 (D. Mass.). And Louis DiNunzio's father is Anthony DiNunzio, who became acting boss of the NELCN when his brother Carmen went to prison and went to federal prison himself for RICO conspiracy. Cr. No. 11-00004-S-PAS-9 (D.R.I.). In 2011, he spent two months in custody for civil contempt because he refused to testify before a grand jury in Suffolk Superior Court. PSR ¶ 51. In fact, KAZONIS's only regular employment before this case was working at his stepfather's cheese shop in the North End—a location that was bugged by the FBI as part of its investigation of Carmen DiNunzio's activities as the boss of the NELCN. PSR ¶ 72.

### C.     Respect for the Law and General Deterrence

A sentence of imprisonment is necessary to convince the defendant of the unlawfulness of his actions and promote respect for the law. Moreover, there must be some consequence to defendant for engaging in drug dealing and subverting the regulatory scheme enacted by the Commonwealth. Straight probation leaves little disincentive for the defendant's criminal behavior.

There is a broader issue of general deterrence here in two respects. First, the federal government retains an interest in criminal enforcement of the marijuana laws and in supporting the several states' regulatory scheme. A term of imprisonment is necessary to send the message that marijuana remains illegal and cannot be trafficked, especially in violation of state law and especially to young people. Second, a strong term of imprisonment is necessary to deter those

involved in or hoping to become a part of the LCN.   For many years, the government has dedicated investigatory and prosecutorial resources to eradicating the LCN.   Despite this effort, the LCN persists and continues to threaten the community.   In many ways, driven by a never-ending proliferation of television programs, movies, and novels, the allure of the LCN is stronger than ever.   A sentence within the guideline range, as requested in this case, will send a strong message that involvement in the LCN leads not to a life of glory and riches as portrayed on television but to prison.

### IV.    COMPARISON TO OTHER DEFENDANTS

While every defendant is sentenced independently for his own case, the government's recommendation is consistent with its anticipated recommendations in this and related cases. The government anticipates that it will recommend a sentence of 21 months for co-defendant Louis DiNunzio, who was a member of the NELCN and therefore more serious than KAZONIS in this criminal activity, and 18 months for co-defendant John Woodman, whose role in this case was less serious (although not worthy of a role reduction) but has a greater criminal history.[7] In addition, this case arose from the same NELCN investigation that also gave rise to an extortion case against two longtime NELCN members, also before this session of the Court: <u>United States v. Anthony Spagnolo and Pryce Quintina</u>, Cr. No. 14-10282-PBS.   In that case, the defendants recently pled guilty pursuant to non-binding plea agreements in which the government agrees to recommend sentences of 21 and 18 months, respectively.   In the government's view, while it is difficult to compare cases involving different crimes and different defendants, the defendants group at roughly the same level, and the government has made its recommendation accordingly.

---

[7] The fourth defendant, Robert Fitzpatrick, is not comparable because he entered the Court's RISE program.   His sentencing has been continued so that he may complete the program.

**V. THE GOVERNMENT'S RECOMMENDATION**

For the reasons stated above, and pursuant to 18 U.S.C. §3553(a), the government requests that the Court impose the following sentence:

- a sentence of imprisonment for a term of 18 months;

- no fine;

- supervised release for a term of 36 months;

- a $100 special assessment; and

- the proposed order of forfeiture (money judgment) [dkt. no.183-1], filed on January 11, 2016, and preliminary order of forfeiture [dkt. no. 166-1], entered by the Court on November 10, 2015.

> Respectfully submitted,
>
> CARMEN M. ORTIZ
> UNITED STATES ATTORNEY
>
> By:   s/ Timothy E. Moran
> TIMOTHY E. MORAN
> SETH B. KOSTO
> Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I, Timothy E. Moran, Assistant U.S. Attorney, certify that I caused a copy of the foregoing sentencing memorandum to be served by email to defense counsel.

> s/ Timothy E. Moran
> TIMOTHY E. MORAN
> Assistant U.S. Attorney

Dated: January 12, 2015